ZEA DEEB,

      Plaintiff,

v.                     CASE NO. 8:07-CV-2201-T-17EAJ

OLD NAVY, LLC and
THE GAP, INC.,

      Defendants.

_____/

## ORDER

This cause is before the Court on:

```
Dkt. 28 Motion for Summary Judgment
Dkt. 26 Notice
Dkt. 27 Notice
Dkt. 29 Declaration
Dkt. 30 Deposition
Dkt. 31 Deposition
Dkt. 32 Deposition
Dkt. 33 Deposition
Dkt. 34 Deposition
Dkt. 35 Deposition
Dkt. 37 Deposition
Dkt. 41 Response
Dkt. 42 Notice
Dkt. 43 Notice
Dkt. 44 Notice
Dkt. 49 Reply
```

This case includes Plaintiff's claim for unlawful discrimination on account of age under the Age Discrimination in Employment Act (Count I), and under the Florida Civil Rights Act (Count II.). Plaintiff Zea Deeb also asserts a claim for retaliation in violation of Title VII, 42 U.S.C. Sec. 2000, et seq. (Count III), and in violation of Ch. 760, Florida Statutes (Count IV). Plaintiff Deeb also asserts a claim under the Florida Private Whistleblower's Act, Ch. 448.102, Florida Statutes. (Dkt. 20).

I. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986 All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted." Id. at 249-50.

II. Statement of Facts

1.  Defendants hired Plaintiff Zea Deeb on September 3, 1999 as a Sales Associate at Old Navy Store 5887 in Clearwater, Florida.  At that time Plaintiff Deeb was 45 years old.

2.  Defendants promoted Plaintiff Deeb from Sales Associate to Front End Supervisor, a non-managerial position, on October 14, 2001.  On February 1, 2004, Defendants promoted Plaintiff Deeb to Customer Service Supervisor, a non-managerial position.

3.  During the relevant time period, a General Manager operated the Clearwater Store with the support of a Logistics Manager and a Customer Service Manager.  The General Manager, Logistics Manager and Customer Service Manager are exempt salaried positions.  The Customer Service Supervisor is an hourly position.

4.  Plaintiff Deeb reviewed and signed Defendants' "Discrimination and Harassment on the Job" Policy on July 17, 2002.  Plaintiff Deeb testified Plaintiff was aware of Defendants' Employee Hotline telephone number and Defendants' Open Door policy. (Deeb Deposition, p. 68).  Plaintiff Deeb testified that personnel policies are available to employees in the employee handbook or online.  (Deeb Deposition, p. 72).  Plaintiff Deeb did not use the Open Door policy or the Employee Hotline to complain about age discrimination in connection with Plaintiff's failure-to-promote claim or Plaintiff's termination claim. (Deeb Deposition, p. 179).

5. In 2004, a male employee whom Plaintiff Deeb supervised used the Employee Hotline to lodge a complaint about Plaintiff's behavior when the employee's boyfriend attempted to purchase clothes at the Store. Defendants conducted an investigation based on the complaint, and Plaintiff Deeb was counseled as to the incident. (Dkt. 25).

6. In August, 2006, Plaintiff Deeb participated in the Talent Assessment Program ("TAP"). TAP is a program in which an employee's readiness for a management position is assessed. Plaintiff Deeb interviewed with several Old Navy General Managers during the event. After the event, Plaintiff Deeb's managers told Plaintiff that the consensus was that Plaintiff was ready for a promotion.

7. In October, 2006, Gynnifer Burnett became District Manager of the district which includes the Clearwater Store. General Manager Nash notified District Manager Burnett that Plaintiff Deeb was dissatisfied with Plaintiff's pay. After review, District Manager Burnett decided to give Plaintiff Deeb an increase in pay, in March, 2007.

8. Defendants do not post job openings for positions below general manager. The District Manager has the discretion to post any job opening externally and interview those applicants, or to select someone within his or her district to promote internally without holding interviews or entertaining competition. (Thompson Deposition, pp. 7, 19-21). When job openings become available that the District Manager intends to fill internally, those openings are placed on a shared computer drive to which all employees have access. (Burnett Deposition, pp. 68-69).

4

9. In 2007, Defendants changed the management structure of stores generating low sales volume by eliminating one assistant manager position. The Clearwater Store where Plaintiff Deeb worked is not a low volume store, so that Store retained the original management structure.

10. Defendants transferred Maria Pianese from the Port Richey Store, where she was an Assistant Manager, to the Clearwater Store. The Port Richey Store was a low volume store. District Manager Burnett offered Pianese a position at the Tyrone Store or the Clearwater Store. (Pianese Deposition, p. 16).

11. In her deposition, District Manager Gynnifer Burnett testified that Defendants did not solicit applications for the assistant manager position because their intent was to laterally transfer and "save" a current assistant manager whose position was being eliminated due to downsizing. Defendants did not post this position. (Burnett Deposition, p. 69).

12. Plaintiff Deeb spoke with District Manager Gynnifer Burnett by telephone in April, 2007 to inquire why Plaintiff Deeb did not get the position. At that time, Plaintiff Deeb did not complain about age discrimination. (Deeb Deposition, pp. 176-177).

13. Plaintiff Deeb spoke with General Manager William Nash after Plaintiff Deeb spoke with District Manager Burnett. Plaintiff Deeb stated she believed that she was not promoted to the assistant manager position held by Maria Pianese because of Plaintiff Deeb's age. (Deeb Deposition, p. 167). Plaintiff Deeb testified that General Manager Nash never made any negative

comments about her age. (Deeb Deposition, p. 173). Plaintiff Deeb testified that Kathleen Casalini made negative comments about Plaintiff's age, in a joking way. Casalini made no adverse employment decisions about Plaintiff. Plaintiff Deeb testified that Plaintiff was told that General Manager Nash told District Manager Burnett about Plaintiff Deeb's complaint of age discrimination as to the failure to promote claim. (Deeb Deposition, pp. 166-168).

14. Defendants' Funeral Leave Policy provides:

**FUNERAL LEAVE**

All exempt and full-time non-exempt employees will be granted up to three days paid funeral leave due to the death of a parent, spouse, life-partner, sibling, child, grandparent, grandchild, in-law, stepparent, stepsibling or stepchild. (The Manager or Employee Relations must approve Exceptions to these relatives.)

. . . . .

An employee may also be able to use Paid Time Off or request an unpaid leave of absence, for funeral leave.

**Procedures**

1. The employee is responsible for notifying his/her Manager of the death and initiate a request for leave.

2. The Manager is responsible for keying funeral leave with FNL on the employee's time card.

3. Payroll will prepare checks as if the time has been worked. (This time is not counted for overtime purposes.)

(Dkt. 25-2, p. 12).

15. Defendants' Timekeeping Policy states:

> ....
>
> Non-exempt Managers may not modify their own time punches unless they are initiating or projecting payroll. Additions or modifications that are determined to be excessive may result in corrective action. The non-exempt Manager modifying their own punch must complete all of the following:
>
>> Notify your General Manager of the situation.
>>
>> Print the exception report.
>>
>> Write the reason for the modification and the date you notified your General Manager on the exception report.
>>
>> File the exception report with your final Summary of Employee Punches in your Operations file cabinet or in a designated Payroll binder.
>
> **TIME CARD VIOLATIONS**
> Examples of violations include:
>
>> Failure to record hours for work performed (e.g. Including work done at home, before clocking in, or after clocking out).
>>
>> Moving hours from one day to another on time cards so overtime does not get recorded.
>>
>> Removing correctly recorded hours from a time card.
>>
>> Recording time worked in any other way than exactly as it occurred.

> **Note:** Willful violation of these
> laws by employees will result in
> termination.

(Dkt. 25-2, p. 13).

16. On April 25, 2007, Plaintiff Deeb asked General Manager Nash whether Plaintiff could take two days off to attend a friend's funeral, which Nash approved. (Deeb Deposition, p. 120). Plaintiff Deeb testified she did not ask Nash to take time off from work under the Funeral Leave policy. (Deeb Deposition, p. 119-121). Plaintiff Deeb testified that Suzanne Marceau was present during Plaintiff Deeb's discussion with Nash.

17. On April 26, 2007, Plaintiff Deeb called the Store and spoke to Logistics Manager Suzanne Marceau. Plaintiff Deeb alleges that Plaintiff asked Marceau whether Plaintiff could take the time off from work as leave under the Funeral Leave Policy, and Marceau said Plaintiff could take the time as funeral leave. Plaintiff alleges Plaintiff asked Marceau to code Plaintiff's time off from work as paid "funeral leave" into the time system, and Marceau said she would enter the time as funeral leave.

18. In her deposition, Plaintiff Deeb testified that time off was given under the Funeral Leave Policy when Plaintiff's father died and Plaintiff's father-in-law died. Plaintiff Deeb denied knowing the specific provisions of the Funeral Leave Policy. (Deeb Deposition, p. 128). Plaintiff Deeb testified Plaintiff did not look up the policy provisions because her funeral leave time was approved by a manager who knew the funeral was for a friend, not a family member. (Deeb Deposition, p. 127.)

19.   In her deposition, Suzanne Marceau testified that Plaintiff Deeb telephoned her, and told her that Plaintiff Deeb was traveling to a "family member's" funeral.   When Plaintiff asked Marceau whether Plaintiff qualified for funeral leave pay, Marceau responded "yes."

20.   On Thursday, April 26, 2007, when General Manager Nash arrived at the Store, Suzanne Marceau informed him that Plaintiff was absent, attending a funeral, and Nash responded he already knew Plaintiff Deeb was attending a friend's funeral.   Marceau asked Nash whether the funeral was for a "family member" or a "friend" and Nash responded that it was for a friend.   Marceau testified that she did not key Plaintiff's funeral leave into the system because it did not qualify as paid leave.

21.   Plaintiff Deeb returned to work on Saturday, April 28, 2007, and found that Plaintiff's leave time was not coded in payroll as paid funeral leave under the Funeral Leave Policy.

22.   Plaintiff Deeb asked Assistant Manager Jacqueline Rivera to enter Plaintiff's leave as paid funeral leave. Assistant Manager Rivera did not enter the funeral leave time.

23.   Plaintiff asked Assistant Manager Maria Pianese to enter Plaintiff's leave as paid funeral leave.   Assistant Manager Pianese did not enter the funeral leave time.

24.   Plaintiff Deeb entered her own time off from work and coded it as paid funeral leave.   (Deeb Deposition, p. 126-127, 133).   Plaintiff worked on Monday, April 30, 2007, then took a week off as vacation, "Paid Time Off."   (Deeb Deposition, pp.

25.  In her deposition, Suzanne Marceau testified that she noticed the entry of Plaintiff's funeral leave in the "summary of punches", and telephoned Plaintiff's residence.  Plaintiff Deeb was away, and Marceau left a message that it was important for Plaintiff Deeb to call her.  Suzanne Marceau testified that Plaintiff Deeb did not call her.  Marceau turned the summary of punches over to General Manager Nash, and told Nash that Plaintiff Deeb put in Plaintiff's funeral time, and only Nash could authorize it.

26.  General Manager Nash reviewed the payroll documents, and noted Plaintiff Deeb's entry of funeral leave.  Nash contacted District Manager Burnett.  District Manager Burnett consulted with Regional Human Resources Manager Mindy Thompson.

27.  Nash, Burnett and Thompson agreed that Plaintiff Deeb's employment should be terminated for violating the Funeral Leave Policy and the Time Modification Policy.  In her deposition, District Manager Burnett testified that General Manager Nash first proposed the termination of Plaintiff Deeb's employment as the appropriate discipline for Plaintiff's alleged policy violations. (Burnett Deposition, pp. 82-84).  Burnett agreed with the decision, and Thompson approved the decision. (Thompson Deposition, pp. 38-40).  HR Manager Thompson testified that at the time she approved the termination decision, Thompson did not know of Plaintiff Deeb's complaint of age discrimination. (Thompson Deposition, p. 45).

28. General Manager Nash terminated Plaintiff Deeb's employment when Plaintiff Deeb returned to work on May 10, 2007. Nash informed Plaintiff Deeb that Plaintiff had improperly inputted her own leave time as paid funeral leave, despite the fact that several managers instructed Plaintiff not to do so.

29. The "Corrective Action Document" dated 5/10/2007 which reflects Plaintiff Deeb's termination states the "unsatisfactory behavior" for Plaintiff's termination:

> Violation to Policy and Procedure 5-2 - Funeral Leave
>
> -Funeral leave is only for immediate family unless otherwise approved by GM
> -Only the GM or Manager can enter FNL leave into the time card
>
> Violation to Timekeeping 6.1
> -Failure to notify GM of situation
> -Print the exception report
> -Failure to write reason for modification and date you notified GM on the exception
>
> Zea asked her GM if she could take Funeral Leave and the GM notified her that this leave is only to be used when an immediate family member passes away. Zea explained that the death was that of a family friend so the GM told her she could not use FNL for this occasion. Zea then asked another manager to enter her FNL for her and that manager refused to enter it for the same reason.
>
> After being told two times that her situation did not warrant the use of Funeral Leave, Zea proceeded to enter her own Funeral Leave into the payroll system on Saturday 4/28/2007.
>
> Violation of these policies will result in termination from Old Navy.

Case No. 8:07-CV-2201-T-17EAJ

(Dkt. 25-2, p. 14).

30. Plaintiff Deeb did not raise any claim of age discrimination when Nash informed Plaintiff of her termination.

31. Plaintiff Deeb filed her Charge of Discrimination for age discrimination and retaliation on August 13, 2007:

> "I was employed at Old Navy (a division of GAP, Inc.) Since 1999 as a Sales Associate. The last position I held was Customer Experience Supervisor. In August 2006, I completed a program that would allow me to be promoted to a management position and I was told the next management position that came open would be extended to me for an interview. In April, 2007, I became aware of a management position that was opening in my store due to the promotion of the current Customer Experience Manager. Although I requested to be allowed to interview for this position, a younger female employee was promoted to the Customer Experience Manager position without me being given a chance to interview. I am also aware of other management positions that were filled by younger, less experienced persons, without me being given the opportunity to interview for those positions. When I learned the Customer Experience Manager position had been given to a younger, less experienced employee in April, 2007, I announced that I thought I was being discriminated (sic) due to my age. On May 10, 2007, I was terminated.

32. In her deposition, Plaintiff Deeb testified that Plaintiff did not think that General Manager Nash discriminated against Plaintiff, but did think that District Manager Burnett discriminated against Plaintiff. (Deeb Deposition, p. 96). Plaintiff Deeb further testified that Plaintiff Deeb believed

12

that Plaintiff did not get the promotion based on age, but Plaintiff Deeb did not know why Defendants' terminated Plaintiff's employment. (Deeb Deposition, p. 174). Plaintiff Deeb further testified that Plaintiff's termination was discriminatory:

> "Because they were mad at me because I said they discriminated against my age, and they didn't even follow through as to why I put funeral time in. So they fired me because I was complaining about discrimination."

(Deeb Deposition, p. 175).

33. Plaintiff Deeb filed her Complaint in this case on November 6, 2007 in Pinellas County Circuit Court. This case was removed on December 4, 2007.

III. Discussion

Plaintiff Zeeb's claim for employment discrimination includes Defendants' alleged failure to promote Plaintiff Deeb based on age, and wrongful termination based on age.

The legal standards governing Title VII are applied interchangeably to ADEA claims. See Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001).

A. Direct Evidence - Failure to Promote - Discrete Acts

Direct evidence is evidence that reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." Carter v. Three

Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998). Direct evidence, if believed, "proves the existence of a fact without inference or presumption." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004).

In response to Defendants' Motion, Plaintiff Deeb argues that Defendants' CMIT (College Managers in Training) recruiting program and lack of a formal promotion procedure or open position posting system, standing alone and taken together, constitute direct evidence of age discrimination.

Defendants respond that Plaintiff's allegations of discrimination involving Defendants' CMIT recruiting program and lack of a formal promotion procedure or open position posting system are barred because these discrete purported discriminatory acts were not raised in the Charge of Discrimination or in the Complaint. Defendants argue that Plaintiff Deeb has not exhausted administrative remedies as to the above allegations, and the Court should not consider them.

Defendants further argue that Plaintiff Deeb never applied to Defendants' CMIT program. Defendants argue that as a matter of law the CMIT program is not evidence of discrimination. Grossman v. Dillard Dept. Stores, Inc., 109 F.3d 457, 459 (8th Cir. 1997); Hansard v. Pepsi-Cola Metro. Bottling Co., Inc., 865 F.2d 1461, 1466 n. 1 (5th Cir. 1989).

In a disparate treatment claim, liability depends on whether the protected trait (under the ADEA age) **actually** motivated the employer's decision. Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 141 (2000). In the context of an ADEA claim,

direct evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the discriminatory attitude...sufficient to permit the fact finder to infer that the attitude was more likely than not a motivating factor in the employer's decision." <u>Walton v. McDonnell Douglas Corp.</u>, 167 F.3d 423, 426 (8th Cir. 1999). In this case, as to the failure to promote claim, the decision-maker was District Manager Burnett. As to the wrongful termination claim, the decision-makers were Nash, Burnett and Thompson.

In the Charge of Discrimination, Plaintiff Deeb complains that Plaintiff was not allowed to interview for the next management position that came open in the Clearwater Store, after being told that the position would be extended to Plaintiff for an interview. In her deposition Plaintiff Deeb testified that Plaintiff knew that Kathleen Casalini was being promoted, and had a discussion with District Manager Burnett in October, 2006 in which Burnett said "The position is going to be open, so you just need to train and prepare yourself, because Kathleen will not be here forever." (Deeb Deposition, p. 100). Plaintiff Deeb testified that Plaintiff responded "Well, that's good, because you know I am interested in a management position."

Plaintiff Deeb testified that District Manager Burnett never made any negative comments about Plaintiff's age. (Deeb Deposition, p. 172). District Manager Burnett testified that Defendants did not advertise the position in order to "save" the job of Assistant Manager Pianese, whose position in the Port Richey Store was eliminated due to downsizing. Plaintiff Deeb testified she had a telephone conversation in which District

15

Manager Burnett was very angry that Plaintiff Deeb challenged the decision to promote two other supervisors into management positions. (Deeb Deposition, pp. 152-157).

1.   Failure to Exhaust

Defendants have the burden to establish by a preponderance of the evidence that Plaintiff did not exhaust administrative remedies.

The Court notes that Plaintiff Deeb has not raised a hostile environment claim; Plaintiff's Charge of Discrimination refers to discrete acts.   The Court also notes that Plaintiff Deeb does not refer to the CMIT program in the Charge of Discrimination or the Complaint, nor does Plaintiff Deeb complain about the absence of formal promotion standards or the absence of an open position posting system in the Charge of Discrimination or the Complaint.

An ADEA action may be based "not only upon the specific complaints made by the employee's EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination."   See Chanda v. Engelhard/ICC, 234 F.3d 1219, 1224 (11th Cir. 2000).   Although the allegations in a judicial suit must bear some relation to the EEOC charge of discrimination, courts are "extremely reluctant to allow procedural technicalities to bar claims brought [under Title VII,]" and "the scope of an EEOC complaint should not be strictly interpreted." Sanchez v. Standard Brands, Inc., 431 F.2d 460, 465 (5th Cir. 1970).

16

An allegation that an employer engages in widespread discrimination as a matter of practice and policy is not "like or related to" an allegation that an employer has discriminated against a specific employee under particular circumstances. To the extent that Plaintiff Deeb seeks to support Plaintiff's individual discrimination and retaliation claims with evidence of a widespread pattern and practice of discrimination by Defendants, the Court finds that a pattern and practice claim is beyond the scope of Plaintiff's Charge of Discrimination. "The inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus will not be on individual [] decisions but on a pattern of discriminatory decision-making.'" Cooper v. Federal Reserve Bank of Richmond, 467 US 867, 876 (1984). The EEOC investigation of a pattern or practice of discrimination would have been more complex than the investigation into allegations of discrimination against Plaintiff alone.

The Court notes that Plaintiff Deeb did not amend her Charge of Discrimination or her Complaint to include the above allegations. A plaintiff cannot amend her complaint by means of issues raised for the first time in a motion for summary judgment. The Court cannot dismiss claims which have not been raised for failure to exhaust those claims. Pattern and practice evidence is admissible to demonstrate that an employer's employment decision conformed to a general policy of discrimination...and that the presumptively valid reasons for [an employee's] rejection were in fact a coverup for a...discriminatory decision, McDonnell Douglas v. Green, 411 U.S. 792, 805 (1973). The Court will consider Plaintiff's argument in

17

the current context, the pending Motion for Summary Judgment.

## 2. CMIT Program

Defendants have a "College Manager In Training" program in which college graduates are recruited at to be management trainees at job fairs. (Deeb Deposition, pp. 109-112). Plaintiff Deeb recruited at a job fair in 2006 at USF.

There is no record evidence that the CMIT Program was limited to college graduates outside the protected class. In other cases, courts have held that recruiting recent college graduates is not evidence that a company discriminates against older workers. Grossman v. Dillard Dept. Stores, Inc., 109 F.3d 457, 459 (8th Cir. 1997); Hansard v. Pepsi-Cola Metro. Bottling Co., Inc., 865 F.2d 1461, 1466 n. 1 (5th Cir. 1989).

After consideration, the Court finds as a matter of law that the CMIT program, either alone or in combination with an absence of formal promotion standards and procedures, and the absence of an open posting system, does not constitute direct evidence of age discrimination.

## 3. Formal Promotion Standards/Procedures

Plaintiff Deeb argues that an employer's failure to use formal procedures to post notice of available promotions or for determining who would be offered a promotion fosters and enables discrimination. In Joseph v. Publix Super Markets, Inc., 151 Fed. Appx. 760, 767-768 (11th Cir. 2005), the Eleventh Circuit said:

> "We are persuaded that the principles
> announced in this Court's Title VII
> jurisprudence concerning hiring and
> promotions also requires employers to post
> adequate notice of vacant positions that are
> available for lateral transfer to better
> paying jobs, and to promulgate objective
> standards for an employer to determine his or
> her eligibility and ranking in order to
> provide an employee with access to facts that
> may demonstrate a discriminatory animus.
> Because Publix failed to post notice of
> vacancies for produce managers in higher
> volume stores, Mr. Joseph was not required to
> demonstrate that he asked for a transfer
> "when he did not know about and when there
> was no formal mechanism for expressing his
> interest."

In _Joseph_, _supra_, the Eleventh Circuit Court of Appeals
ruled on the appeal of a Rule 50 motion after a jury trial. The
Eleventh Circuit viewed the evidence in the light most favorable
to Plaintiff Joseph, and found that the record showed that
Plaintiff Joseph repeatedly informed his Publix supervisors,
orally, and in writing, that he wanted a transfer to the next
available position as a produce manager. "Without notice of
vacant positions, or an objective criteria for eligibility for a
transfer to a Category A store, it was not possible for Mr.
Joseph to apply for a transfer to a specific location before it
was filled." _Joseph_, at 765.

In _Joseph_, _supra_ the Eleventh Circuit Court of Appeals
explains that in a disparate treatment case fully tried on the
merits, review of the validity of a judgment as a matter of law
is limited to the question whether the plaintiff presented
sufficient evidence to prove each element of his claim. At the
end of a trial, the question of whether a plaintiff has made out

a prima facie case under the McDonnell-Douglas burden-shifting framework is no longer relevant. As the Eleventh Circuit points out, there is a difference between the circumstantial evidence that creates a rebuttable presumption of discriminatory motive under McDonnell-Douglas and the elements of a Title VII claim.

In Joseph, supra, the Eleventh Circuit Court of Appeals relies on Carmichael v. Birmingham Saw Works, Inc., 738 F.2d 1126 (11th Cir. 1984), in which the Eleventh Circuit carved out an exception to the "applied for" element of a prima facie case under the McDonnell-Douglas framework. In Carmichael, a case involving a Title VII failure-to-promote claim, the Eleventh Circuit held that when a company employs an informal method of advertising a vacancy, such as by "word of mouth," which is ineffective in conveying notice to a plaintiff of the job opening, the plaintiff may establish a prima facie case without demonstrating that the plaintiff applied for the position. The plaintiff must demonstrate only that the employer "had some reason or duty to consider him or her for the post." Id at 1133; see also Vessel v. Atlanta Indep. School System, 408 F.3d 763, 768 (11th Cir. 2005)([W]here an employer does not formally announce a position but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second [prima facie] prong that he applied for the position, only that the employer had some reason to consider him for the post.")

The Court does not view Joseph as binding precedent which establishes that the failure to publish formal promotion standards and promotion procedures constitutes direct evidence of

discrimination. That case is an appeal of a case that was
decided under the McDonnell-Douglas framework, which is applied
to cases decided on circumstantial evidence.

The Eleventh Circuit has held that subjective practices such
as interviews and supervisory recommendations are capable of
operating as barriers to advancement, but the Eleventh Circuit
has also held that subjective criteria are not per se improper
and cannot be used to show pretext absent evidence that
subjective...criteria were used as a mask for discrimination.
See Denney v. City of Albany, 247 F.3d 1172 (11th Cir. 2001). In
Chapman v. AI Transport, Inc., 229 F.3d 1012 (11th Cir. 2000),
the Eleventh Circuit makes it clear that a subjective reason for
an employment decision is a legally sufficient, non-
discriminatory reason if the defendant articulates a clear,
reasonably specific factual basis on which to base its subjective
opinion. The cases cited above involve the "pretext" element of
the McDonnell-Douglas framework, and do not involve issues of
direct evidence.

The undisputed evidence does not establish the presence of
secrecy about promotion standards. It is undisputed that the
District Manager exercises discretion in promotion decisions.
Plaintiff Deeb's performance was reviewed annually. Plaintiff
Deeb testified about the TAP process in which Plaintiff
participated in 2006. Plaintiff Deeb testified that she was
required to do an "individual development plan" ("IDO") every
year. (Deeb Deposition, p. 157). Plaintiff Deeb testified as to
a meeting with General Manager Nash and Assistant Manager
Casalini in which sixteen "managerial qualities" were addressed.
(Deeb Deposition, pp. 167-171).

After consideration, the Court finds that the absence of formal promotion standards and procedures, either alone or in combination with the CMIT program and the absence of an open posting system, does not constitute direct evidence of discrimination.

4. Open Posting System

The discussion above as to formal promotion standards applies equally to the issue of the absence of an open posting system.

It is undisputed that the District Manager has discretion to fill positions internally or externally. District Manager Burnett testified that open positions are put on a shared drive to which employees have access. Plaintiff Deeb testified that she had a discussion in 2006 with District Manager Burnett in which Plaintiff Deeb communicated Plaintiff's interest in advancement. Plaintiff Deeb also communicated with District Manager Burnett via e-mail and telephone. The District Manager, General Manager and Assistant Managers were aware of Plaintiff Deeb's interest in career advancement and higher pay. Plaintiff Deeb testified that Plaintiff was aware of the Open Door Policy and the Employee Hotline, but did not make any complaints of age discrimination.

After consideration, the Court finds that the absence of an open posting system, alone as well as in combination with the CMIT program and the absence of formal promotion standards and policies, does not constitute direct evidence of discrimination.

B. Circumstantial Evidence

A claim for failure to promote based on age may be proved by showing: 1) that the plaintiff belongs to the protected age class of ages between forty and seventy; 2) that the plaintiff was qualified and applied for a position the employer was trying to fill; 3) that the plaintiff was denied the position; and 4) that others who were not members of the protected age class were hired, or the employer continued to seek applicants with the plaintiff's qualifications. McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case for age-based termination, a plaintiff must prove that the discharged employee who is a member of the protected age class was qualified to do the job from which she was discharged, and that a substantially younger person filled her position. The plaintiff's burden of establishing a prima facie case is not heavy. Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998).

Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for its actions. McDonnell-Douglas, 411 U.S. at 802. Once the employer articulates a legitimate non-discriminatory reason for its actions, the presumption of discrimination disappears, and the plaintiff must come forward with evidence to show that the employer's proffered reasons are pretextual. Plaintiff may overcome a summary judgment motion by either "persuading the court that a discriminatory motive more likely motivated the employer, or indirectly by showing that the employer's proffered explanation unworthy of credence. Even if Plaintiff demonstrates that the employer's articulated non-

23

discriminatory reason is false, Plaintiff must still prove that her adverse employment action was truly based upon unlawful discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

1.  Prima Facie Case

A.  Failure to Promote

Defendants have raised various challenges to the elements of Plaintiff's prima facie case.  For the purposes of this Motion for Summary Judgment, the Court assumes that Plaintiff Deeb has established a prima facie case for Plaintiff's failure-to-promote claim.

B.  Termination

For the purpose of this Motion for Summary Judgment, the Court assumes that Plaintiff Deeb has established a prima facie case for Plaintiff's wrongful termination claim.

2.  Pretext

A.  Failure to Promote

District Manager Gynnifer Burnett told Plaintiff Deeb that due to restructuring Burnett laterally transferred Maria Pianese from the Port Richey Store to the Clearwater Store.  Burnett testified that since Maria Pianese's job at the Port Richey store was eliminated due to restructuring, the choice was either to severance Maria Pianese out, or to transfer her laterally.

Burnett testified that, in order to prepare for Defendants' future growth, Burnett chose a lateral transfer (Burnett Deposition, p. 70). Defendants expected to open additional stores within the immediate area.

Plaintiff Deeb testified that District Manager Burnett explained the lateral transfer due to restructuring, but Plaintiff Deeb believes that Plaintiff Deeb was not promoted due to age discrimination. Plaintiff Deeb relies on her experience and performance to show that Plaintiff Deeb had qualifications superior to those of Maria Pianese, who was a CMIT with limited experience.

In this case, Defendants did not evaluate two individual candidates, and then decide one candidate should be promoted. Defendants made a strategic business decision to transfer a manager who otherwise would have been terminated. Plaintiff Deeb does not dispute that Defendants were in fact restructuring their operations. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). Plaintiff's subjective belief of an age discrimination coverup is not sufficient to establish that Defendants' reason is pretextual. Plaintiff Deeb has not brought forth evidence which establishes that Defendants' legitimate explanation for the failure to promote Plaintiff is false, and that the real reason is age discrimination.

B. Termination

The "Corrective Action Document" states that Plaintiff's employment was terminated due to violation of funeral leave policy and violation of timekeeping policy. The CAD states that after being told two times that her situation did not warrant the use of Funeral Leave, Plaintiff proceeded to enter her own Funeral Leave into the Payroll System on Saturday, 4/28/2007.

Plaintiff Deeb testified that "they were mad at me because I said that they discriminated against my age and they didn't follow through as to why I put funeral time in. So they fired me because I was complaining about discrimination." (Deeb Deposition, p. 175).

The basic facts of the incident that resulted in the termination of Plaintiff's employment are undisputed. Plaintiff Deeb admits Plaintiff attended the funeral of a family friend, and Plaintiff Deeb admits that Plaintiff did not ask General Manager Nash for funeral leave for Plaintiff's absence. Plaintiff Deeb admits that Plaintiff Deeb entered her own time as funeral leave in the payroll records, after other managers refused to enter the funeral leave time.

Plaintiff Deeb has not brought forth any evidence that establishes that Defendants' legitimate explanation for the termination of Plaintiff's employment is false, or that it is more likely that intentional discrimination motivated Plaintiff's termination.

After consideration, the Court **grants** Defendants' Motion for Summary Judgment as to Count I (ADEA Discrimination) and Count II

Case No. 8:07-CV-2201-T-17EAJ
(FCRA Age Discrimination).

C. Retaliation - Title VII

Plaintiff's Complaint includes a claim for retaliation under Title VII, which forbids discrimination based on race, color, religion, sex or national origin. Plaintiff's Charge of Discrimination includes only Plaintiff's claim of discrimination under the Age Discrimination in Employment Act of 1967. Defendants move for entry summary judgment because Plaintiff did not exhaust administrative remedies as to Plaintiff's Title VII claim.

Plaintiff Deeb concedes that Defendants' Motion for Summary Judgment should be granted. After consideration, the Court **grants** Defendants' Motion for Summary Judgment as to Count III.

D. Retaliation - FCRA

In an ADEA case, a prima facie case of retaliation is established by showing: 1) a statutorily protected expression; 2) an adverse employment action; and 3) a causal connection between the protected expression and the adverse employment action. Once a plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to rebut the presumption of retaliation by producing a legitimate reason for the adverse employment action. If the defendant proffers a legitimate reason the presumption of retaliation is rebutted and drops from the case. The burden shifts to the plaintiff to raise a genuine factual issue whether the proffered reasons is a pretext to mask a retaliatory action.

To establish that a plaintiff engaged in a statutorily protected expression, a plaintiff must show that she has a good faith, reasonable belief that the employer was engaged in unlawful employment practices. This burden has a subjective and objective component. A plaintiff must show that she subjectively believed that her employer was engaged in unlawful employment practices, and also that her belief was objectively reasonable in light of the facts and record presented. <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307 (11th Cir. 2002).

In April, 2007, Plaintiff Deeb complained to General Manager Nash that Defendants discriminated against Plaintiff on the basis of age when Plaintiff was not interviewed for Kathleen Casalini's position, and Maria Pianese was transferred to the Clearwater Store. Plaintiff Deeb did not file a formal Charge of Discrimination until after Defendants' terminated Plaintiff's employment. The record establishes that Plaintiff subjectively believed that Defendants engaged in unlawful employment practices. As to whether Plaintiff's belief was objectively reasonable in light of the facts and the record, the Court has considered the following undisputed facts.

The Court notes that Plaintiff Deeb was employed by Defendants for eight years. Plaintiff Deeb knew where to find Defendants' policies and procedures. There is no record evidence that Defendants' policies and procedures as to funeral leave and timekeeping were recently amended before May, 2007. Plaintiff Deeb testified that she never requested that General Manager Nash approve "funeral leave"--paid time off to attend a funeral. Plaintiff Deeb requested General Manager Nash to approve her absence, but never asked Nash about being paid for her absence.

Plaintiff Deeb did in fact attend the funeral of a family friend. Plaintiff Deeb asked Suzanne Marceau to approve "funeral leave" but Suzanne Marceau did not enter the funeral leave in the payroll system. Plaintiff Deeb asked two Assistant Managers to enter funeral leave for Plaintiff but they did not enter it. Plaintiff Deeb admitted that Plaintiff entered her own funeral leave time. Plaintiff Deeb did not contact General Manager Nash or District Manager Burnett before Plaintiff Deeb entered her own funeral leave time in the payroll system. General Manager Nash did not approve Plaintiff's funeral leave; upon discovering Plaintiff Deeb's action, General Manager Nash contacted District Manager Burnett to decide the appropriate discipline. District Manager Burnett contacted Regional HR Manager Mindy Thompson, and they investigated the facts. While neither Burnett nor Thompson interviewed Plaintiff Deeb, the other employees involved in the incident were interviewed. District Manager Burnett sought approval for the termination of Plaintiff's employment from Regional HR Manager Thompson. There is no dispute as to the facts of what occurred, and the only element that an interview with Plaintiff Deeb would have added is an explanation for why Plaintiff Deeb entered her own funeral leave. The policy itself makes it clear that Defendants regard a violation of the Timekeeping Policy to be a terminable offense. Given the factual situation, the failure to interview Plaintiff Deeb does not render the personnel decision suspect.

The Court also notes that Defendants have a formal anti-discrimination policy. In the past when Plaintiff raised an issue of discrimination, Defendants were responsive to Plaintiff's complaints; Defendants contacted Plaintiff to investigate and resolve Plaintiff's complaint. When a complaint

of discrimination was made about Plaintiff's conduct, Defendants also investigated and resolved that complaint. Defendants' anti-discrimination policy also provides additional avenues for the reporting of complaints to the corporate office, besides verbal complaints to the local General Manager. Plaintiff Deeb testified that she was aware of those avenues.

Given the above undisputed facts, the Court concludes that the belief that Defendants retaliated against Plaintiff Deeb by terminating Plaintiff's employment after Plaintiff complained about age discrimination is not objectively reasonable. The Court concludes that Plaintiff Deeb has not established a prima facie case of retaliation.

In order to satisfy the causal link prong of a prima facie retaliation case, the plaintiff must, at a minimum, generally establish that defendant was actually aware of the protected expression. In a case involving a corporate defendant, the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression, and acted within the scope of his or her agency when taking the action. Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).

In this case, General Manager Nash knew of Plaintiff's internal complaint of age discrimination. The Court is not aware of evidence that establishes that District Manager Burnett knew of Plaintiff's internal complaint of age discrimination. Regional HR Manager Thompson testified that she did not know Plaintiff Deeb had complained about age discrimination.

The causal link may be established by direct evidence or circumstantial evidence.  In this case, if the direct evidence is not sufficient to establish the causal link, the circumstantial evidence of Plaintiff's termination in May, 2007 after Plaintiff's verbal complaint of age discrimination in April, 2007 is sufficient to establish the causal link.

Even if the Court assumes that Plaintiff Deeb established a prima facie case of retaliation, Defendants meet the burden of showing a legitimate explanation for Plaintiff's termination through the undisputed facts set forth above.  Plaintiff Deeb has not shown that Defendants' explanation is false, or that it is more likely that a discriminatory motive was the real reason for Plaintiff's termination.  Defendants hired Plaintiff when Plaintiff Deeb was forty-five years old, and Defendants promoted Plaintiff during the eight years Plaintiff was employed by Defendants.  Plaintiff Deeb has not established that Defendants action in enforcing Defendants' policies is a subterfuge for intentional age discrimination.

After consideration, the Court **grants** Defendants' Motion for Summary Judgment as to Count IV.

E.  Florida Private Whistleblower's Act - Retaliation

Claims brought under the Florida Whistleblower's Act are analyzed in the same manner as Title VII retaliation claims. Sierminski v. Transouth Financial Corp., 216 F.3d 945 (11th Cir. 2000).

To be protected under the Florida Whistleblower's Act, an

employee must demonstrate that she: 1) disclosed or threatened to disclose to an agency under oath and in writing; 2) an activity, policy or practice of the employer; 3) that was in violation of law, rule or regulation; 4) that the employer retaliated against her because of disclosure or threat to disclose; and 5) that she gave written notice to the employer of its activity, policy or practice, and 6) thereby giving the employer a reasonable opportunity to correct the activity, policy or practice. See Taylor v. Memorial Health Systems, Inc., 770 So.2d 752 (2000)

In this case, there is no record evidence that Plaintiff Deeb gave written notice to Defendants of Plaintiff's claim for age discrimination for failure to promote Plaintiff, in retaliation for which Defendants allegedly terminated Plaintiff's employment. Plaintiff Deeb testified only that she told General Manager Nash that Plaintiff believed Plaintiff was not promoted due to age discrimination. Plaintiff Deeb's Charge of Discrimination was filed after Plaintiff's employment was terminated.

The FWA requires Plaintiff Deeb to actually prove a violation of a law, rule or regulation in order to succeed. See White v. Purdue Pharma, Inc., 369 F. Supp. 1335, 1337-39 (M.D. Fla. 2005). The Court has granted Defendants' Motion for Summary Judgment as to Plaintiff's ADEA and FCRA claims. The Court therefore concludes that Plaintiff's FWA claim cannot succeed.

The Court incorporates the analysis of Plaintiff's retaliation claim under the FCRA above, and finds that Plaintiff cannot establish a prima facie claim for retaliation under the FWA. Plaintiff's belief that Defendants retaliated against

Case No. 8:07-CV-2201-T-17EAJ

Plaintiff was not objectively reasonable.

Assuming that Plaintiff Deeb could establish a *prima* *facie* case, Defendants articulated a legitimate nondiscriminatory reason for the termination of Plaintiff's employment, and Plaintiff Deeb has not shown that Defendants' reason is false or that it is more likely that age discrimination motivated the adverse employment action.

After consideration, the Court **grants** Defendants' Motion for Summary Judgment as to Count V. Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 28) is **granted.** The Clerk of Court shall enter a final judgment in favor of Defendants and against Plaintiff, and close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this ____ day of September, 2009.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record